UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Mutual Real Estate Holdings, LLC</u>

     v.                            Civil No. 10-cv-236-LM

<u>Houston Casualty Co., et al.</u>

## O R D E R

    Before the court is plaintiff, Mutual Real Estate Holdings, LLC's, Motion to Remand (Doc. no. 8).  Plaintiff does business as "RE/MAX Elite," and shall hereinafter be referred to as "RE/MAX."  Defendants Houston Casualty Company ("Houston") and Lexington Insurance Company ("Lexington") object to the motion to remand.[1]

    On August 19, 2010, the court heard oral argument on the motion.  For the reasons which follow, the court denies the motion.  (Doc. no. 8).

## I. BACKGROUND FACTS

    There are two underlying lawsuits in this case.  The first is a lawsuit over the sale of a home.  The plaintiffs in that case are dissatisfied homeowners, Ron and Deborah Desrosiers (collectively "Desrosiers"), and the defendants are the seller

---

[1]Although Houston filed the written objection to the motion to remand, Lexington joins every aspect of Houston's objection.

of the home, Joseph Owen, the real estate agent, Laurie Norton, and Ms. Norton's employer, RE/MAX.  The Desrosiers filed the lawsuit on or about November 11, 2009, in Rockingham Superior Court (hereinafter referred to as "Homeowner Lawsuit").

The second lawsuit is a declaratory judgment action brought by RE/MAX and Ms. Norton against the defendants, Houston and Lexington, seeking a declaration of coverage for the Homeowner Lawsuit.  RE/MAX filed the second lawsuit on or about May 14, 2010, in Merrimack County Superior Court.  It is entitled Mutual Real Estate Holdings, LLC d/b/a RE/MAX Elite v. Houston Casualty Company and Lexington Insurance Company, docket no. 217-2010-CV-00291 (hereinafter referred to as "Declaratory Judgment Action").  Houston removed the Declaratory Judgment Action to this court, and on July 2, 2010, RE/MAX filed the instant motion to remand.

To understand the procedural posture, a more detailed discussion of these two lawsuits is necessary.

**A. Homeowner Lawsuit**

On July 19, 2008, the Desrosiers purchased a home in Auburn from Mr. Owen for $319,900.  Ms. Norton acted as the Desrosiers' real estate agent.  More than one year later, on August 17, 2009, the Desrosiers filed a complaint against Ms. Norton with the New Hampshire Real Estate Commission ("Broker Complaint")

2

(Doc. no. 17-2).  The Desrosiers claimed that the house was not habitable, and that they had since been advised it "would be cheaper to have this house taken down and rebuilt" than to make the necessary repairs.  Doc. no. 17-2, pp. 3- 4.  The Desrosiers claimed that Ms. Norton, as a previous owner of the home, had exaggerated the value of the home and concealed its defects. Id. at pp. 3-5.  In the Broker Complaint, the Desrosiers described numerous defects, including leaning walls, for which the cost of repair was estimated to be "in the hundreds of thousands range."  Id. at p. 4.

In their writ, the Desrosiers asserted three separate claims against Ms. Norton: negligence; breach of fiduciary duties; and a violation of the Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A ("RSA"), et. seq. ("CPA").  Doc. no. 17-3.  Against RE/MAX, the Desrosiers incorporated all claims against Ms. Norton into two claims: negligent hiring and supervision, and vicarious liability.  Against Mr. Owen, the Desrosiers asserted one count of negligence.  Id.  At oral argument, RE/MAX indicated that the Desrosiers intend to amend the writ to add the home inspector as a defendant.

The writ does not include an ad damnum clause.  Doc. No. 17- 3, pp. 86-94.  The Desrosiers claim numerous defects in the property, including asbestos on the roof, flooring infected with

insects, the undisclosed presence of an underground fuel tank
and an abandoned well.  They seek damages against Ms. Norton and
RE/MAX for "all of their losses, including interest and costs."
Id.  The alleged losses include "economic harm, construction
expenses, diminution of property value, remedial work costs,
attorneys' fees and costs, lost income, lost profits, lost
opportunity costs, emotional harm and pain and suffering, and
mental anguish."  Id.

### B. Declaratory Judgment Action

After RE/MAX provided notice of the Desrosiers' claim to its
two insurers, both Houston and Lexington denied coverage.
Lexington claimed that its coverage had expired prior to the
claim, and Houston asserted that RE/MAX had notice of the claim
prior to the inception of their contract but did not disclose it
to Houston, and, as a result, the contract did not apply.  In
their respective denial of coverage letters, both companies
referenced other potential exclusions that would apply to bar
the coverage, such as an exclusion for intentional conduct on
the part of the insured.  RE/MAX then filed the Declaratory
Judgment Action seeking a declaration that Houston and Lexington
must provide liability coverage and indemnification for RE/MAX
and its employee, Ms. Norton, in the Homeowner Lawsuit.  In its
petition, RE/MAX did not include an estimate of, or any

statement attempting to codify, the amount of damages sought in the Homeowner Lawsuit.

Houston removed the Declaratory Judgment Action to this court, and in its Notice of Removal asserted that jurisdiction lay in diversity and that the amount in controversy exceeds $75,000.  Lexington has joined in Houston's removal efforts.

In addition to its Notice of Removal, Houston has filed with this court a declaration of Sarah A. Kutner, an attorney at the law firm of DLA Piper US LLP, and counsel to Houston.  Ms. Kutner attests to familiarity with the facts underlying both the Homeowner Lawsuit and Declaratory Judgment Action.  Doc. no. 17-1.  Attached to Ms. Kutner's declaration are the Broker Complaint, Doc. no. 17-2, the writ in the Homeowner Lawsuit, Doc. no. 17-3, and the petition in the Declaratory Judgment Action, Doc. no. 17-4.

## II. LEGAL ANALYSIS

RE/MAX argues that remand is warranted because the amount in controversy in the Declaratory Judgment Action does not meet the jurisdictional minimum ($75,000) for federal court.  RE/MAX asserts first that the Notice of Removal is procedurally deficient because it does not, on its face, supply facts sufficient to determine that the case meets the minimum amount in controversy.

In the alternative, RE/MAX asserts that Houston's additional evidence (Kutner declaration and attachments) does not meet its burden of proof on the jurisdictional question.

The party seeking to invoke federal jurisdiction, such as a removal defendant, bears the burden of proving that the amount in controversy meets the jurisdictional minimum.  Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009).  The burden of proof is by a "reasonable probability."  Amoche, 556 F.3d at 50 (analyzing the same burden of proof question in the context of the Class Action Fairness Act).[2]  As explained by the First Circuit, the phrase "reasonable probability" is "for all practical purposes identical to the preponderance standard . . . ."  Id. (affirming the district court's use of the phrase "preponderance of the evidence" to describe the burden of proof).  See also Evans v. Yum Brands, Inc., 326 F.Supp.2d 214, 220 (D.N.H. 2004) (applying the "preponderance of evidence" standard to the amount in controversy determination).  However, as a matter of semantics, the phrase "reasonable probability" is more appropriate at this early stage in the proceedings where

[2] Although the amount in controversy under the Class Action Fairness Act, "CAFA," is $5 million, the analysis of the removal defendant's burden of proof to establish the amount in controversy under CAFA is no different under 28 U.S.C. § 1332(a)(1).  As a result, the court finds the reasoning of Amoche applicable here.

little or no evidence has been produced: "The 'reasonable probability' language better captures the preliminary nature of this inquiry, reserving the preponderance of the evidence terminology for other conclusions."  <u>Amoche</u>, 556 F.3d at 50.

Where the jurisdictional amount is not apparent from the underlying complaint, a court "need look to the notice of removal and any other materials submitted by the removing defendant . . . ."  <u>Yum Brands</u>, 326 F.Supp.2d at 220.  At this stage, the court can consider "summary-judgment-type" evidence. <u>Id.</u>  Evidence is only relevant as to the amount in controversy at the time of removal.  <u>Id.</u>

Several principles apply as the court weighs this evidence. First, the jurisdiction granted federal courts under 28 U.S.C. §1332(a) is limited.  "This means that we have a responsibility to police the border of federal jurisdiction." <u>Spielman v. Genzyme Corp.</u>, 251 F.3d 1, 4 (1st Cir. 2001).  <u>See</u> <u>also</u> <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288 (1938) ("The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts."). Accordingly, any doubts in the evidence should be construed in favor of remand.

A second principle guiding this court's inquiry is the requirement that this preliminary determination "should be done quickly, without an extensive fact-finding inquiry." Spielman, 251 F.3d at 4-5.  "To make the 'which court' decision expeditiously and cheaply, a judge must simplify the inquiry." Id. (internal quotations omitted).  See also Amoche, 556 F.3d at 50 ("Consideration of this preliminary issue should not devolve into a mini-trial regarding the amount in controversy."). Likewise, in determining whether a removal defendant has met the "reasonable probability" standard, the court "may consider which party has better access to the relevant information" at this early stage.  Amoche, 556 F.3d at 51.

Finally, as to the evidence of damages, the plaintiff's likelihood of success on the merits "is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiff[] [is] ultimately likely to recover."  Amoche, 556 F.3d at 51. Provided a plaintiff's claims in the underlying lawsuit are colorable, "the court's inquiry does not focus on their probable success but rather on whether to anyone familiar with the applicable law the claim could objectively have been viewed as worth the jurisdictional minimum."  Yum Brands, 326 F.Supp.2d at 221 (internal quotations omitted).  In making this objective

determination, a court must take into account the fact that a
plaintiff has asserted a claim under a statute that includes a
damage multiplier.  Id. at 222.  Further, the fact that a
complaint "discloses the existence of a valid defense to the
claim" does not affect the amount in controversy analysis.  See
generally St. Paul Mercury, 303 U.S. at 289.  See also Spielman,
251 F.3d at 5 (citing Coventry Sewage Assocs. v. Dworkin Realty
Co., 71 F.3d 1, 5 (1st Cir. 1995); Yum Brands, 326 F.Supp.2d at
221 (citing Coventry Sewage, 71 F.3d at 5, and St. Paul Mercury,
303 U.S. at 289).

    With these principles in mind, the court must determine
whether Houston has met the "reasonable probability" test.

    RE/MAX first asserts that remand is warranted because
Houston's notice of removal does not, on its face, contain facts
sufficient to meet Houston's burden of proving the amount in
controversy.  The notice of removal contains an allegation that
the amount in controversy exceeds $75,000.  Where the amount in
controversy is challenged by a plaintiff, the court requires
more than a bare allegation.  However, in this Circuit, a
removal defendant can meet its burden by going outside the four

corners of the notice of removal.[3]  A removal defendant can meet
its burden by alleging sufficient facts in its notice of
removal, relying on the face of the complaint in the underlying
case, or, if the notice and complaint are insufficient, the
defendant may submit "summary-judgment-type" evidence.  Yum
Brands, 326 F.Supp.2d at 220 (internal quotation removed).[4]

In this case, Houston has submitted documents which contain a
recitation of the Desrosiers' complaint against the collective
defendants.  Along with the writ in the Homeowner Lawsuit, Doc.
no. 17-3, and the petition in the Declaratory Judgment Action,

---

[3] Only in the Tenth Circuit is there a rule requiring courts to
look solely at the facts alleged in the notice of removal.  See
Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995).
However, the reasoning in Laughlin is inconsistent with the
First Circuit's amount in controversy jurisprudence.  See
Amoche, 556 F.3d at 50-51, Spielman, 251 F.3d at 4-6.  In
rejecting the Laughlin approach, the 11th Circuit has explained:

> While it is undoubtedly best to include all relevant
> evidence in the petition for removal . . . , there
> is no good reason to keep a district court from
> eliciting or reviewing evidence outside the removal
> petition.  We align ourselves with our sister
> circuits in adopting a more flexible approach,
> allowing the district court when necessary to
> consider post-removal evidence in assessing removal
> jurisdiction.

Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir.
2000).  The reasoning of Sierminski is consistent with the
approach taken by the First Circuit in Amoche, and the court
applies it here.  Accord Yum Brands, 326 F.Supp.2d at n.6.
[4] The court notes that RE/MAX's motion to remand acknowledges
that the court may consider "summary judgment type" evidence to
decide this question.  See Doc. No. 8 at para. 7.

Doc. no. 17-4, Houston has filed the Broker Complaint, Doc. no. 17-2, which details the history of the Desrosiers' alleged interactions with Ms. Norton.

The writ in the Homeowner Lawsuit alleges that Ms. Norton, and RE/MAX as her employer, were negligent and violated fiduciary obligations to the Desrosiers by encouraging them to make an offer on the home shortly after the first walk-through, and by failing to advise them to seek an evaluation of the home by competent professionals, such as a structural engineer. Having relied on faulty advice, the Desrosiers allege that after purchasing the home, they "discovered substantial structural defects requiring immediate remedial action, asbestos on the roofing shingles of the shed, substantially compromised floor joists which were infected with insects, an underground fuel tank, and an abandoned well that was hidden by wooden decks that [Ms. Norton, as a previous owner of the home] had built . . . ." Doc. No. 17-3 at p. 2. The Desrosiers allege that, as a previous owner of the home, Ms. Norton was familiar with the defects in the property and, as their agent, had a heightened obligation to communicate those defects to them.  Id. at pp. 1-7.

The writ further alleges that Ms. Norton "made false statements and omitted material facts for the purpose of inducing [the Desrosiers] to buy the property . . . ."  Id.

They claim that, as a result of Ms. Norton's false statements
and omissions, they suffered "severe financial consequences"
including "economic harm, construction expenses, diminution of
property value, remedial work costs, attorneys' fees and costs,
lost income, lost profits, lost opportunity costs, emotional
harm and pain and suffering, and mental anguish."  Id. at p.
00090.  For Ms. Norton's alleged misrepresentations and breach
of fiduciary duties, the Desrosiers also assert a claim against
her under the CPA.  Id. at p. 4.

   While the writ does not mention specific financial amounts
for damages, the Broker Complaint contains more detail on that
score.  Specifically, the Desrosiers describe the structural
repairs they will be required to make to the home (for it to be
"safe and livable") as costing in "the hundreds of thousands" of
dollars.  Doc. no. 17-2, at p. 00004.[5] The sale price of the
property was $319,000, and the Desrosiers allege that they have
been advised that the house "would be cheaper to [] have taken
down and rebuilt" than to repair.  Id.

   Neither party disputes that the jurisdictional amount in
controversy in a declaratory judgment action involving the
applicability of an insurance policy, such as the instant case,

---

[5] The actual letter of complaint does not contain page numbers.
As such, the court will use the bates numbers on the bottom
right-hand corner of the Broker Complaint for page citations.

is measured by the value of the underlying claim.  <u>Adam v.</u>
<u>Hensley</u>, 2008 WL 2079966 at *6 (D.N.H. 2008).  <u>See also</u>
<u>Hartford Ins. Grp. v. Lou-Con Inc.</u>, 293 F.3d 908, 911–12 (5th
Cir. 2002).  Here, the underlying claim is the Homeowner
Lawsuit, for which RE/MAX and Ms. Norton seek coverage in the
Declaratory Lawsuit.

Provided the underlying claim is colorable, "the court's
inquiry does not focus on [its] probable success but rather on
whether to anyone familiar with the applicable law the claim
could objectively have been viewed as worth the jurisdictional
minimum."  <u>Yum Brands</u>, 326 F. Supp.2d at 221 (internal
quotations omitted).  Further, the fact that RE/MAX and Ms.
Norton may have valid defenses to the claim does not affect the
amount in controversy analysis.  <u>See</u> <u>generally</u> <u>St. Paul Mercury</u>,
303 U.S. at 289.  <u>See also</u> <u>Spielman</u>, 251 F.3d at 5 (citing
<u>Coventry Sewage Assocs.</u>, 71 F.3d at 5; <u>Yum Brands</u>, 326 F.Supp.2d
at 221 (citing <u>Coventry Sewage</u>, 71 F.3d at 5, and <u>St. Paul</u>
<u>Mercury</u>, 303 U.S. at 289).

In the Homeowner Lawsuit, the Desrosiers have a colorable
claim for damages based on the alleged negligence, breach of
fiduciary duty and violations of the CPA they have asserted
against RE/MAX and Ms. Norton.  RE/MAX does not dispute the
colorable nature of these claims.  Rather, RE/MAX urges the

court to measure the amount in controversy by assessing the likelihood of the Desrosiers' success on the merits, as well as RE/MAX's defenses to the claims in the Homeowner Lawsuit, and Houston's defenses in the Declaratory Lawsuit.

As explained above, however, the law does not permit the court to engage in an analysis of the Desrosiers' likelihood of success. For the court to engage in that kind of inquiry, the court would, in fairness, have to allow discovery and then conduct a mini-trial on the Desrosiers' (and perhaps RE/MAX's) likelihood of success on the claims. Such a mini-trial is not permitted at this early stage in the litigation. See Amoche, 556 F.3d at 50 ("Consideration of this preliminary issue should not devolve into a mini-trial regarding the amount in controversy.").

In the event the Desrosiers prove their allegations, they would clearly be seeking an amount in excess of $75,000. In the Broker Complaint, they assert structural repairs as costing in "the hundreds of thousands" of dollars. Doc. no. 17-2, at p. 00004. If they succeed in proving their CPA claim (i.e., that Ms. Norton intentionally misrepresented or withheld facts), they would be entitled to treble damages.

The court answers in the affirmative the question of whether "anyone familiar with the applicable law" could objectively view

the Desrosiers' claims as worth the jurisdictional minimum.  <u>Yum</u>

<u>Brands</u>, 326 F.Supp.2d at 221.  For the aforementioned reasons,

the court denies RE/MAX's motion to remand.  (Doc. no. 8).

     SO ORDERED.

                              _____
                              Landya B. McCafferty
                              United States Magistrate Judge

Dated:  September 13, 2010

cc:  Christopher H.M. Carter, Esq.
     Sarah A. Kutner, Esq.
     Aidan M. McCormack, Esq.
     Mark D. Morrissette, Esq.
     Ralph Suozzo, Esq.
     Kevin E. Verge, Esq.