UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Mutual Real Estate Holdings,</u>
<u>LLC, d/b/a RE/MAX Elite</u>

   v.                                                   Civil No. 10-cv-236-LM

<u>Houston Casualty Company and</u>
<u>Lexington Insurance Company</u>


**O R D E R**

In a case that has been removed from the New Hampshire Superior Court, Mutual Real Estate Holdings, LLC ("Mutual") petitions for a declaratory judgment that it, and any agents working for it, are entitled to coverage under insurance policies issued by Houston Casualty Company ("Houston") and Lexington Insurance Company ("Lexington"). Before the court is Lexington's motion for summary judgment. Mutual objects. For the reasons that follow, Lexington's motion for summary judgment is granted.

**Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

**Background**

The following facts are undisputed. Mutual is a real estate agency. In the summer of 2008, Ronald and Deborah Desrosiers hired Laurie Norton, one of Mutual's agents, to serve as their buyers' agent. In July of 2008, Norton showed the Desrosiers a property that the Desrosiers ultimately purchased.

In a letter dated July 8, 2009, the Desrosiers informed Norton of their belief that Norton had misrepresented the condition of the property they purchased and had "made statements that . . . were not completely truthful." Resp't's Mot. Summ. J., Ex. B (doc. no. 30-3). The Desrosiers also asked Norton to "advise [them] of any liability insurance [she] may have personally and also [Mutual] on the above issues." Id. Norton and Mutual denied liability in a July 14, 2009, letter from counsel.

At the time Mutual received and responded to the Desrosiers' letter, and until August 31, 2009, it was covered by a policy of miscellaneous professional liability insurance issued by Lexington. Mutual's policy also included a separate endorsement for accident insurance.

The professional liability policy's "Insuring Agreement" section provides, in pertinent part:

> The Company will pay on behalf of the **Insured Damages** for which the **Insured** becomes legally obligated to pay because of any **Claim** first made against the **Insured** during the **Policy Period** and reported in writing to the Company pursuant to the terms of this policy, within the **Policy Period**, or to the extent applicable, the Basic . . . Reporting Period. . . .

Resp't's Mot. Summ. J., Ex. G (doc. no. 30-8), at 13 (emphasis in the original). In the "Notice of Claims" subsection of its "Conditions" section, the professional liability policy provides:

> (1) As a condition precedent to any right to coverage afforded by this policy, the **Insured** must give written notice to the Company of any **Claim** as soon as practicable after such **Claim** is first made during the **Policy Period** or 30 day Basic Reporting Period . . . (if applicable), and as otherwise required by this policy, to:
>
>   Attention: Claims manager
>   Lexington Insurance Company
>   100 Summer Street
>   Boston, MA 02110-2103
>
> (2) If the **Insured** becomes aware of any circumstance which may subsequently give rise to a **Claim** against the **Insured** and, during the **Policy Period** or, if applicable, the Basic Reporting Period . . . gives the Company written notice of:
>
>   a. the nature and date of the specific **Wrongful Act**;
>
>   b. the names of potential claimants;
>
>   c. the injury or consequences which have or might result therefrom; and

3

>    d.   the manner in which the **Insured** first became aware of the potential for a **Claim** therefrom, then any **Claim** subsequently made against the Insured arising out of such **Wrongful Act** shall be deemed to have been made during the **Policy Period** or, if applicable, the Basic Reporting Period . . . .

<u>Id.</u> at 18-19 (emphasis in the original).  Finally, another subsection of the policy's "Conditions" section describes the "Basic Reporting Period" as follows:

> If this policy is not renewed for any reason or is cancelled for any reason other than non-payment of premium or deductible, a Basic Reporting Period is automatically provided without additional charge. Coverage is extended to include **Claims** arising out of a **Wrongful Act** which occurred prior to the end of the effective date of such cancellation or non renewal and not before the **Retroactive Date** stated in Item 7. of the Declaration; and are otherwise covered by this policy, provided the **Claim** is first made against the **Insured** during **Policy Period** and reported to the Company within 30 days after the end of the effective date of such cancellation or non renewal.

<u>Id.</u> at 20 (emphasis in the original).

Mutual did not inform Lexington of the Desrosiers' July 8 letter, notwithstanding the fact that the Desrosiers themselves expressly raised the issue of insurance coverage.  On August 14, 2009, the Desrosiers filed a complaint against Norton with the New Hampshire Real Estate Commission ("Commission").  By letter dated August 26, 2009, the Commission provided Norton with a copy of the Desrosiers' complaint against her.  Norton responded

4

to the Commission by letter dated September 1, 2009.  Mutual, however, did not report the Desrosiers' complaint to Lexington.

By letter dated October 30, 2009, counsel for the Desrosiers contacted counsel for Mutual and asked whether Mutual and Norton would be willing to waive formal service of a writ the Desrosiers were planning to file against them.  On November 4, Mutual informed its insurance agent of the Desrosiers' impending suit.  Mutual's insurance agent, in turn, notified Houston Casualty Company, which had issued Mutual a policy of professional liability insurance covering the period from August 31, 2009, through August 31, 2010.  Houston denied coverage on grounds that Mutual had knowledge of the wrongful act on which the Desrosiers' suit was based before the inception date of the policy it issued Mutual, thus barring coverage.

On the same day Mutual received Houston's denial of coverage, December 23, 2009, Mutual notified Lexington of the Desrosiers' claims.  Lexington, in turn, denied coverage, on grounds that it issued Mutual a "claims made and reported" policy and Mutual did not report the Desrosiers' claims until after the Basic Reporting Period had ended on September 30, 2009.

Based on the foregoing, Mutual filed a petition for declaratory judgment. In its petition, Mutual asks the court to declare that the professional liability policies issued by both Houston and Lexington were "in full force and effect at the time of the reported incident," and that those policies provide liability and indemnification for it and any agent working for it within the scope of his or her affiliation.

## Discussion

Under New Hampshire law, "[i]n a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition." Brickley v. Progressive N. Ins. Co., 160 N.H. 625, 627 (2010) (quoting Carter v. Concord Gen. Mut. Ins. Co., 155 N.H. 515, 517 (2007)).

Lexington moves for summary judgment, arguing that the unambiguous terms of the professional liability policy it issued Mutual bar coverage under the circumstances of this case. Substantively, it argues that it issued Mutual a "claims-made" policy, and that Mutual did not report the Desrosiers' claims during the Policy Period or the subsequent thirty-day Basic Reporting Period. Mutual does not challenge the factual basis for Lexington's argument, i.e., that it reported the Desrosiers'

claim after the end of the Basic Reporting Period.  Rather, Mutual argues that its policy from Lexington was not a "claims-made" policy but was an "occurrence" policy, under which Lexington is obligated to show prejudice before it can deny coverage on grounds of an insured's untimely report of a claim against it.  Accordingly, resolution of the motion before the court turns on a single question of law: whether the policy Lexington issued to Mutual was a "claims-made" or an "occurrence" policy.  See Progressive N. Ins. Co. v. Argonaut Ins. Co., 161 N.H. 778, 780 (2011) ("The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for [the] court to decide.").

With regard to the principles that guide the interpretation of insurance-policy language, the New Hampshire Supreme Court has recently explained:

> We look to the plain and ordinary meaning of the policy's words in context.  Policy terms are construed objectively, and when the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning.  When an insurance policy's language is ambiguous, however, and one reasonable interpretation favors coverage, we construe the policy in the insured's favor and against the insurer.

Progressive, 161 N.H. at 781 (citing Marikar v. Peerless Ins. Co., 151 N.H. 395, 397 (2004)).  When interpreting an insurance policy, a court should "construe the language as would a

reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole." Brickley, 160 N.H. at 627 (quoting Hartley v. Elec. Ins. Co., 154 N.H. 687, 688 (2007)). Ambiguity exists when "more than one reasonable interpretation is possible," id. (quoting Catholic Med. Ctr. v. Exec. Risk Indem., Inc., 151 N.H. 699, 701 (2005)), but courts should "not . . . perform amazing feats of linguistic gymnastics to find a term ambiguous," id. (citation omitted).

As noted, the key question in this case is whether the policy at issue is a "claims-made" policy or an "occurrence" policy. If the policy is a "claims-made" policy, Lexington correctly denied coverage based upon Mutual's failure to report the Desrosiers' claim until after the end of the Basic Reporting Period; if the policy is an "occurrence" policy, then Mutual is not necessarily disqualified from coverage based upon when it reported the Desrosiers' claim.

A "claims-made" policy "provide[s] liability coverage for claims that are made against the insured and reported to the insurer during the policy period." Catholic Med. Ctr., 151 N.H. at 703 (quoting Bianco Prof'l Ass'n v. Home Ins. Co., 144 N.H. 288, 296 (1999)) (emphasis added). Thus, under a "claims-made" policy, "by failing to timely notify the insurer of a potential

claim, the insured[ ] forfeit[s] coverage." Id. In contrast, "[a]n occurrence-based policy is one 'in which coverage is triggered by the occurrence of a negligent act or omission during the coverage period . . . .'" Benson v. N.H. Ins. Guar. Ass'n, 151 N.H. 590, 596 (2004) (quoting Bianco, 144 N.H. at 296). As explained more fully in the seminal New Hampshire case on this issue:

> Claims-made policies provide liability coverage for claims that are made against the insured and reported to the insurer during the policy period. See Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc., 137 N.H. 680, 683 (1993).
>
> > There is no requirement that an insurance company prove it was prejudiced due to lack of notice under a claims made policy. This is because, unlike an occurrence policy in which coverage is triggered by the occurrence of a negligent act or omission during the coverage period, a claims made policy provides coverage when the act or omission is discovered and brought to the attention of the insurer, regardless of when the act or omission occurred.
>
> Insurance Placements, Inc. v. Utica Mut. Ins. Co., 917 S.W.2d 592, 597 (Mo. Ct. App. 1996) (citation omitted); see also Zuckerman v. Nat. Union Fire Ins., 495 A.2d 395, 406 ([N.J.] 1985). Claims-made policies necessarily include a presumption that the insurer suffers prejudice when the insurer does not receive timely notice of the claim during the policy period, preventing the insured from seeking coverage under subsequent policies. See Chas. T. Main v. Fireman's Fund Ins., 551 N.E.2d 28, 30 ([Mass.] 1990).
>
> > When a claims-made policy obligates an insured to give notice upon receiving knowledge of any act or

9

> omission that "could reasonably be expected" to be the basis of a claim, it in effect accelerates a future claim to bring it within the current policy period. See National Union Fire Ins. v. Baker & McKenzie, 997 F.2d 305, 306 (7th Cir. 1993). The insurer in turn obligates itself to treat the reported potential claim as an actual one that must be insured when it becomes actual in fact. See id.

Bianco, 144 N.H. at 296 (parallel citations omitted).

Regarding how to tell the difference between a "claims-made" policy and an "occurrence" policy, the New Hampshire Supreme Court has noted:

> [O]ur classification of a policy as occurrence-based has not turned upon the presence or absence of that term. Instead, our classification of a liability policy as either occurrence-based or claims-made has consistently centered upon the differentiation in notice requirements outlined in Bianco: specifically, whether the policy provides coverage for claims based on an event occurring during the policy period, "regardless of whether the claim or occurrence itself is brought to the attention of the insured or made known to the insurer during the policy period" (occurrence-based), or for claims that are made against the insured and "reported to the insurer during the policy period" (claims-made).

Bates v. Vt. Mut. Ins. Co., 157 N.H. 391, 397-98 (2008) (citation omitted) (emphasis added by Bates); see also Concord Hospital, 137 N.H. at 683 ("The JUA policies . . . are not 'claims made' simply because they say they are. 'Claims made' is a category of policies that contain certain provisions;

without those provisions, no amount of labelling can make these policies 'claims made' or induce us to treat them as such.").

Bates provides a good example of what an "occurrence" policy looks like.  In that case, the policy provided: "We will pay medical expenses . . . for 'bodily injury' caused by an accident . . . provided that . . . [t]he expenses are incurred and reported to us within one year of the date of the accident." 157 N.H. at 395 (emphasis in the original).  Here, by contrast, the relevant policy language states: "The Company will pay on behalf of the **Insured Damages** for which the **Insured** becomes legally obligated to pay because of any **Claim** first made against the Insured during the **Policy Period** and reported in writing to the Company pursuant to the terms of this policy, within the Policy Period."  Based on the relevant policy provisions, see Bates, 157 N.H. at 398; Concord Hospital, 137 N.H. at 683, the professional liability policy Lexington issued Mutual cannot reasonably be interpreted to be an "occurrence" policy.  Thus, it is, unambiguously, a "claims-made" policy.

Mutual's argument to the contrary suffers from two major flaws.  First, while asking the court to disregard various headings and other language that identifies the policy as a "claims-made" policy, Mutual completely disregards Section I,

11

the substantive section of the policy titled "Insuring Agreement," which includes the language quoted in the previous paragraph.  Ignoring the "Insuring Agreement" section is not a reasonable way to interpret the policy.  Then, Mutual appears to treat the "Notice of Claim" subsection of Section V – which requires claims to be reported to Lexington, in writing, "as soon as practicable" – as if it were the insuring agreement, rather than the description of a condition precedent.  That too, is an unreasonable way to construe the policy.

Read in the manner in which a reasonable person in Mutual's position would construe the policy as a whole, based upon a more-than-casual reading, Sections I and V.B. do two different things.  Section I says what is covered, <u>i.e.</u>, claims that are made against an insured and reported to Lexington during the Policy Period or the Basic Reporting Period, while Section V.B. says what an insured must do once a claim has been made against it, <u>i.e.</u>, report the claim in writing as soon as practicable (but before the end of the Basic Reporting Period).  Ignoring Section I and construing the condition stated in Section V.B. as the operative insuring agreement are precisely the kind of verbal gymnastics the New Hampshire Supreme Court has repeatedly cautioned against.  <u>See</u> <u>Brickley</u>, 160 N.H. at 627.

Mutual's other attempts to create ambiguity are also unavailing. First, the professional liability policy does contain several provisions, such as Sections V.B.(2) and V.C., that soften the sharp edges of the "claims-made" provision by deeming certain seemingly untimely claims to have been made during the Policy Period. Those provisions, however, actually support Lexington's position rather than Mutual's. If the policy were indeed an "occurrence" policy rather than a "claims-made" policy, there would be no need for provisions related to what counts as a claim made during the Policy Period. In short, the policy's accommodation for occurrences taking place in the Policy Period that could later ripen into Claims (Section V.B.(2)) and its accommodation for Related Claims (Section V.C.) do not trump the Insuring Agreement and transform the policy from a "claims-made" policy into an "occurrence" policy. Moreover the fact that a completely separate accident-insurance endorsement has an occurrence-based insuring agreement says nothing about the insuring agreement in the professional liability portion of the policy.

Because the professional liability policy Lexington issued Mutual is, unambiguously a "claims-made" policy, and it is undisputed that Mutual did not report the Desrosiers' claims to

Lexington until after the end of the Basic Reporting Period, Lexington is entitled to judgment as a matter of law that Mutual is not entitled to professional liability coverage from Lexington for the Desrosiers' claims.

## Conclusion

For the reasons given above, Lexington's motion for summary judgment, document no. 30, is granted.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge


August 30, 2011

cc: Christopher H.M Carter, Esq.
    Sarah A. Kutner, Esq.
    Aidan M. McCormack, Esq.
    Mark D. Morrissette, Esq.
    Danielle L. Pacik, Esq.
    Ralph Suozzo, Esq.