**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Mutual Real Estate Holdings,
LLC, d/b/a RE/MAX Elite

    v.                                  Civil No. 10-cv-236-LM

Houston Casualty Company


**O R D E R**

    In a case that has been removed from the New Hampshire Superior Court, Mutual Real Estate Holdings, LLC ("Mutual") petitioned for a declaratory judgment that it, and any agents working for it, were entitled to coverage under insurance policies issued by Houston Casualty Company ("Houston") and Lexington Insurance Company ("Lexington"). By order dated August 30, 2011, document no. 47, the court granted Lexington's motion for summary judgment. Currently before the court is Houston's motion for summary judgment. Mutual objects. For the reasons that follow, Houston's motion for summary judgment is granted.

**Summary Judgment Standard**

    Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to a judgment as a matter of law."  Fed. R.
Civ. P. 56(a).

## Background

While Mutual's memorandum of law in support of its
objection to summary judgment makes passing reference to
"genuine issues of material fact pertaining to the obligation to
disclose a specious complaint," that memorandum does not
"incorporate a short and concise statement of material facts,
supported by appropriate record citations, as to which [Mutual]
contends a genuine dispute exists so as to require a trial."  LR
7.2(b)(2).  Accordingly, all properly supported material facts
in Houston's factual statement are deemed admitted.  See id.
So, notwithstanding Mutual's passing reference to a factual
dispute precluding summary judgment, this case consists entirely
of questions of law to be decided in relation to the following
undisputed facts.

Mutual is a real estate agency.  In the summer of 2008,
Ronald and Deborah Desrosiers hired Laurie Norton, one of
Mutual's agents, to serve as their buyers' agent.  In July of
2008, Norton showed the Desrosiers a property that the
Desrosiers ultimately purchased.

In a letter dated July 8, 2009, the Desrosiers told Norton that they thought she had misrepresented the condition of the property they purchased and had "made statements that . . . were not completely truthful." Resp't's Mot. Summ. J., Ex. B (doc. no. 30-3). The Desrosiers also asked Norton to "advise [them] of any liability insurance [she] may have personally and also [Mutual] on the above issues." Id. Within a week of receiving the Desrosiers' letter, Norton and Mutual, through counsel, denied liability. At the time of Mutual's correspondence with the Desrosiers, Mutual was covered by a miscellaneous professional liability insurance policy issued by Lexington. Mutual did not inform Lexington of the Desrosiers' letter until December of 2009, at the earliest, when it made a claim for coverage based upon a lawsuit filed by the Desrosiers in November.

On August 14, 2009, the Desrosiers filed a complaint against Norton with the New Hampshire Real Estate Commission ("Commission"). Under cover of a letter Norton received on or before August 30, the Commission provided her with a copy of the Desrosiers' complaint.

During August of 2009, Mutual was preparing an application for professional liability errors and omissions insurance from Houston. That application was submitted on August 27. On

September 3, Houston agreed to bind coverage, and on September 15, Houston issued a policy with: an Inception Date of August 31, 2009; an Expiration Date of August 31, 2010; a Policy Period of August 31, 2009, through August 31, 2010; and a retroactive date of August 12, 2004.

The application Mutual submitted to Houston contained the following four questions:

> 17. In the past (5) years, has any professional liability claim or suit ever been made against the Applicant or any of its predecessor firms if any?
>
> 18. Does any principal, owner, partner or employee know of any incident, act, error or omission that could result in a claim or suit against the Applicant or any predecessor firms?
>
> 19. Have all matters in Question 17. and 18. been reported to the Applicant's former or current insurer(s) or to the former insurer of any predecessor firm or former insurer of a current member of the firm?
>
> 20. Has any principal, owner, partner or employee for whom coverage is sought been the subject of a disciplinary complaint made to any court, administrative agency or regulatory body?

Resp't's Mot. Summ. J., Barbal Decl., Ex. B (doc. no. 33-12), at 10. On August 24, Mutual answered "no" to questions 17, 18, and 20, and answered "yes" to question 19.

The "Insuring Agreement" section of the policy Houston issued Mutual provides as follows:

> The Company [i.e., Houston] shall pay on behalf of the
> Insured any Loss and Claim Expenses, in excess of the
> Deductible subject to the Policy's Limit of Liability,
> as the Insured shall become legally obligated to pay
> as a result of a Claim(s) made against the Insured for
> a Wrongful Act(s) arising from Professional Services
> as set forth by Endorsement to this Policy, provided
> always that: (1) the Claim is first made against the
> Insured and reported to the Company, in writing,
> during the Policy Period . . . ; (2) the Insured has
> no knowledge of such Wrongful Act prior to the
> Inception Date of this Policy; and (3) such Wrongful
> Act takes place on or after the Retroactive Date set
> forth in the Declarations Page of this Policy and
> prior to the end of the Policy Period.

Resp't's Mot. Summ. J., Barbal Decl., Ex. E (doc. no. 33-15), at

3.  The policy further provides that Houston "shall have the

right and duty to defend any covered Claim(s) brought against an

Insured alleging a Wrongful Act(s)."  Id.

Mutual's policy also contains the following relevant

definitions:

> "Claim" shall mean a written demand received by an
> Insured, including the service of suit or institution
> of arbitration proceedings against an Insured, for
> compensation of monetary damages for a Wrongful Act
> allegedly or actually committed by an Insured.
>
> A claim will be deemed to have been first made against
> the Insured when any Insured first receives written
> notice of the Claim.
>
> "Claim Expenses" shall mean: (1) reasonable and
> necessary fees charged by an attorney . . . and (2)
> all other fees, costs or expenses incurred in the
> . . . defense and appeal of a Claim . . .
>
> . . . .

> "Wrongful Act" shall mean any actual or alleged
> negligent act, error or omission or breach of duty
> committed or alleged to have been committed, or for
> failure to render, such Professional Services as are
> customarily rendered in the profession of the Insured
> as set forth by Endorsement to this Policy.

Resp't's Mot. Summ. J., Barbal Decl., Ex. E (doc. no. 33-15), at

4, 6.

Finally, the policy also includes, among others, an

exclusion barring coverage "for any dishonest, criminal,

fraudulent, malicious or intentional Wrongful Act, error or

omission or intentional or knowing violation of the law

committed by or at the direction of the Insured."  Resp't's Mot.

Summ. J., Barbal Decl., Ex. E (doc. no. 33-15), at 6.

Notwithstanding that exclusion, the policy provides that Houston

> shall provide a defense to Claims alleging any of the
> foregoing [fraudulent conduct] until there is a
> judgment, final adjudication, adverse admission or
> finding of fact against the Insured as to such conduct
> at which time the Insured shall reimburse the Company
> for all Claim Expenses incurred by the Company in
> connection with the defense of such claim . . .

Id.

By letter dated October 30, 2009, counsel for the

Desrosiers contacted counsel for Mutual and asked whether Mutual

and Norton would be willing to waive formal service of a Writ of

Summons the Desrosiers were planning to file against them.  On

November 4, Mutual informed its insurance agent of the

Desrosiers' impending suit.  Mutual's insurance agent, in turn, notified Houston.

Houston denied coverage, explaining that coverage was never triggered under the policy's Insuring Agreement because Mutual "had knowledge of the alleged Wrongful Acts giving rise to the Writ of Summons prior to the August 31, 2009 Inception Date of the Policy."  Pet. (doc. 1-1), at 14 (emphasis in the original). As the basis for Mutual's knowledge, Houston cited both the Desrosiers' July 8 letter and their August 17 complaint to the Real Estate Commission.  In addition, Houston: (1) stated its belief that the Desrosiers first made their claim against Mutual in July of 2009, before the start of the Policy Period, and reserved all rights it might have based on the date the Desrosiers first made their claim against Mutual; (2) stated its belief that Mutual had made misrepresentations in its application for insurance and reserved all rights it might have based on those misrepresentations; and (3) pointed out several other potentially relevant policy provisions including the fraud exclusion.

Based on the foregoing, Mutual filed a petition for declaratory judgment.  In its petition, Mutual asks the court to declare that the professional liability policy issued by Houston was "in full force and effect at the time of the reported

incident," and that the policy provides liability indemnification for it and any agent working for it within the scope of his or her affiliation.

### Discussion

Under New Hampshire law, "[i]n a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition." Brickley v. Progressive N. Ins. Co., 160 N.H. 625, 627 (2010) (quoting Carter v. Concord Gen. Mut. Ins. Co., 155 N.H. 515, 517 (2007)).

Houston moves for summary judgment, arguing that Mutual is not entitled to coverage because: (1) Mutual had knowledge of the Wrongful Act underlying its claim for coverage prior to the Inception Date of the policy; (2) it made material misrepresentations in its application for the policy; (3) the Desrosiers' claim against Mutual was not first made during the Policy Period; (4) Mutual breached several of the conditions precedent to coverage stated in the policy, including its duty to provide timely written notice of claims against it; (5) the Desrosiers' claim for the return of fees and charges paid to Mutual is not a covered loss under the terms of the policy; and (6) the policy provides no coverage for dishonest or fraudulent acts. In its objection, Mutual raises four arguments: (1) it

did not have knowledge of any Wrongful Act at the time it applied for the policy or on the policy's Inception Date; (2) the Desrosiers' claim against it was first filed during the Policy Period; (3) it did not fail to give Houston timely written notice of the Desrosiers' claim; and (4) the fraud exclusion is waived as to Mutual, because the Desrosiers do not claim that Mutual (as opposed to Norton) engaged in fraudulent conduct and, as to both Mutual and Norton, the fraud exclusion requires Houston to pay for a defense.

Houston is entitled to judgment as a matter of law because the undisputed factual record demonstrates that: (1) the Desrosiers first made their claim against Mutual before the start of the Policy Period, which means that, under clause one of the Insuring Agreement, coverage was not triggered; and (2) on the policy's Inception Date, Mutual had knowledge of the Wrongful Act underlying the Desrosiers' claim, i.e., Norton's allegedly fraudulent conduct as the Desrosiers' buyers' agent, which means that under clause two of the Insuring Agreement, coverage was not triggered.  Because Houston is entitled to judgment as a matter of law for both of the reasons noted above, there is no need to address Houston's other arguments for summary judgment.

As previously stated, the parties have no factual dispute, so resolution of this case depends upon construction of the insurance policy at issue and application of the policy terms to the undisputed factual record.  Accordingly, this section begins with a brief discussion of the relevant principles of construction and continues with discussions of the two policy provisions that relieve Houston of any obligation to provide coverage to Mutual.

## A. Principles of Construction

With regard to the rules that guide the interpretation of insurance-policy language, the New Hampshire Supreme Court has recently explained:

> We look to the plain and ordinary meaning of the policy's words in context.  Policy terms are construed objectively, and when the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning.  When an insurance policy's language is ambiguous, however, and one reasonable interpretation favors coverage, we construe the policy in the insured's favor and against the insurer.

Progressive N. Ins. Co. v. Argonaut Ins. Co., 161 N.H. 778, 781 (2011) citing Marikar v. Peerless Ins. Co., 151 N.H. 395, 397 (2004)).  When interpreting an insurance policy, a court should "construe the language as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole."  Brickley, 160 N.H. at 627 (quoting

Hartley v. Elec. Ins. Co., 154 N.H. 687, 688 (2007)).  Ambiguity exists when "more than one reasonable interpretation is possible," id. (quoting Catholic Med. Ctr. v. Exec. Risk Indem., Inc., 151 N.H. 699, 701 (2005)), but courts should "not . . . perform amazing feats of linguistic gymnastics to find a term ambiguous," id. (citation omitted).

### B. Clause One: Claim Predating the Policy Period

Houston argues that Mutual is not entitled to coverage because: (1) the Desrosiers first made their claim against Mutual in July of 2009; (2) the Policy Period did not begin until August 31, 2009; and (3) under clause one of the policy's Insuring Agreement, an insured is only entitled to coverage for claims that are "first made against the Insured . . . during the Policy Period."  Mutual argues that the Desrosiers first made their claim against it by filing their lawsuit in November of 2009, which was during the Policy Period.  In the alternative, Mutual argues that the Insuring Agreement provision on which Houston relies is unenforceable as a bar to coverage due to its ambiguity.  The court does not agree.

Mutual's first argument is that the Desrosiers did not make a claim against it in either the July 8 letter or the complaint they filed with the Real Estate Commission.  In other words, Mutual relies on a construction of the policy term "claim" that

11

excludes the July 8 letter and the Commission complaint.  That
is not a reasonable interpretation of the policy.

The policy defines "claim" to mean "a written demand
received by an Insured . . . for compensation of monetary
damages."  It goes on to say that the term "include[es] the
service of suit or institution of arbitration proceedings."
But, the policy does not limit the term "claim" to the service
of a lawsuit or the institution of arbitration proceedings.
Rather, those are examples of written demands.

To be sure, in the context of regulatory construction, the
New Hampshire Supreme Court has held "that the term 'including'
. . . limits the items intended to be covered by the rule to
those of the same type as the items specifically listed."
Conservation Law Found. v. N.H. Wetlands Council, 150 N.H. 1, 6
(2003).  But, Mutual identifies nothing in the policy or
extrinsic to it, other than its own unsupported contentions, to
support its limitation of the term "claim" to written demands
that have the same formality as the service of suit or the
initiation of arbitration.  Beyond that, Mutual does not suggest
what other items might qualify under its construction, and the
court has trouble imagining any kind of written demand that
would have the formality of the service of suit or the
initiation of arbitration without actually being the service of

suit or the initiation of arbitration.  In any event, given the well-understood function of a demand letter as a direct precursor to litigation, see, e.g., New Canaan Bank & Trust v. Pfeffer, 147 N.H. 121, 124 (2001), the court has no difficulty concluding, as a matter of law, that for the purpose of construing the term "claim," a demand letter is the same type of item as the service of suit or the initiation of arbitration. Thus, there is no basis for construing the term "claim" to categorically exclude items such as demand letters. Accordingly, the dispositive question is whether the Desrosiers' July 8 letter to Norton was "a written demand . . . for compensation of monetary damages."

In the July 8 letter, the Desrosiers began by saying that the property they purchased "was misrepresented [by Norton] and not properly disclosed with some major problems."  Resp't's Mot. Summ. J., Kutner Decl., Ex. 1 (doc. no. 33-3).  Then they stated that they had commissioned a structural engineering study that resulted in a recommendation that they undertake "Major Structural repairs . . . which would require significant resources and funds."  Id.  They concluded this way: "We have purchased a home we have been unable to reside in due to [its] being structurally unsound [and] requiring a significant amount of work and monies, which had we been informed up front [about]

we would not have made this purchase." Id.  Perhaps most
importantly, in the middle paragraph of their letter, the
Desrosiers expressly inquired about any liability insurance that
might cover either Norton or Mutual.  While the July 8 letter
does not bear the heading "Demand" or request a specific amount
of money, it identifies: (1) alleged wrongdoing by Norton; (2)
monetary damages incurred by the Desrosiers; and (3) a source of
compensation for those damages, i.e., any insurance that Norton
or Mutual may have.  On that basis, the July 8 letter qualifies
as a "written demand . . . for compensation of money damages,"
which makes it a "claim" for purposes of the Insuring Agreement
in Mutual's policy.

Mutual's argument that clause one of the Insuring Agreement
is ambiguous is unavailing.  For one thing, Mutual does not
specify what term or terms in that clause are ambiguous by
virtue of being susceptible of multiple reasonable
interpretations.  See Brickley, 160 N.H. at 627.  Presuming that
Mutual's focus is on the term "claim," there is no ambiguity.
For one thing, the term is defined in the policy.  Moreover, the
interpretation on which Mutual relies, i.e., the interpretation
that would entitle it to coverage, is not reasonable.

14

As best the court can tell, Mutual interprets clause one as requiring the claim referred to therein to be "legitimate" or "valid."  According to Mutual:

> There simply was no legitimate "claim" presented to the insured until the lawsuit was copied to Attorney St. George on November 4, 2009.
>
>     . . . From the perspective of the insured, a valid claim was not made against the insured until the lawsuit was presented to Attorney St. George on November 4, 2009. . . .  Attorney St. George understood that there was not a legitimate claim and he knew that Mr. and Mrs. Desrosiers were pursuing their complaints with the New Hampshire Real Estate Commission.  [Neither a] lawsuit nor an arbitration was . . . reasonably expected.[1]

Pet'r's Mem. of Law (doc. no. 40-1), at 17-18.

The policy does not expressly limit the term "claim" as "legitimate" or "valid" claims.  Moreover, the policy's definition of "claim" as a "demand . . . for compensation . . . for a Wrongful Act allegedly or actually committed" is strong intrinsic evidence against a requirement that a third party's claim against an insured must be "valid" or "legitimate," i.e., based upon actual Wrongful Acts.  To similar effect is the fact

---

[1] Mutual's averment that a lawsuit was not reasonably expected because the Desrosiers were pursuing a complaint through the Real Estate Commission is substantially undercut by Mutual's acknowledgement that the Commission has no authority to award monetary damages.  Given the unavailability of damages in a proceeding before the Commission, it is difficult to see how it would be reasonable to conclude that the Desrosiers elected to file a complaint with the Commission rather than, as opposed to in addition to, pursuing civil litigation, where damages would be available.

that the policy obligates Houston to pay not just losses, such
as damages assessed against the insured on a valid or legitimate
claim, but also obligates Houston to pay claim expenses, which
are defined as the fees and costs incurred in defending claims
without regard to the legitimacy or validity of those claims.
Given Houston's obligation to defend all claims, not just those
that are legitimate or valid, it would not be reasonable to read
the Insuring Agreement as including a trigger of coverage that
is not activated unless and until a third party makes a
legitimate or valid claim against an insured.

        For its part, Mutual does not say what it means by a
"legitimate" or "valid" claim.  It might be defining those terms
as synonyms of "meritorious."  But Mutual does not indicate how
claims that were not meritorious when presented by letter in
July, before the start of the Policy Period, somehow became
meritorious when presented in a Writ of Summons in November,
during the Policy Period.  All Mutual points to is Attorney St.
George's belief that the claim stated in the July 8 letter was
groundless, and that the Desrosiers had elected to seek a remedy
through the Real Estate Commission instead of seeking a remedy
through civil litigation.  In an ambiguity analysis, Attorney
St. George's subjective beliefs are irrelevant.  What matters is
the way in which a reasonable person could read the insurance

policy.  Because there is no reasonable way to read clause one
of the Insuring Agreement as limiting the term "claim" to
"legitimate" or "valid" claims, there is no ambiguity in that
provision that may be construed in favor of providing coverage
for Mutual.

Based on the foregoing construction of the relevant policy
language, as applied to the undisputed facts of this case, the
court concludes that the Desrosiers first made their claim
against Mutual in July of 2009, before the beginning of the
Policy Period.  Because clause one of the Insuring Agreement
requires a claim to be made against an insured during the Policy
Period in order for coverage to be triggered, Houston is
entitled to judgment as a matter of law on Mutual's claim that
it is entitled to coverage from Houston.

### C. Clause Two: Mutual's Knowledge of the Wrongful Acts

Even if clause one of the Insuring Agreement was not a
sufficient basis for denying coverage, clause two of the
Insuring Agreement, properly construed, also supports a denial
of coverage.  Houston argues that Mutual is not entitled to
coverage because: (1) the Desrosiers' July 8 letter and their
August 17 complaint to the Real Estate Commission gave Mutual
knowledge of Norton's Wrongful Acts; (2) the policy's Inception
Date was August 31; and (3) under clause two of the policy's

Insuring Agreement, an insured is entitled to coverage only so long as "the Insured has no knowledge of such Wrongful Act prior to the Inception Date of this Policy."  Mutual argues that Houston is not entitled to judgment as a matter of law because of an ambiguity in the policy language on which it relies. Specifically, Mutual argues that: (1) the policy may reasonably be interpreted as limiting the definition of "Wrongful Act" to acts that are negligent; and (2) because Mutual's counsel believed that the Desrosiers did not state a meritorious claim for negligence against Norton in their July 8 letter, Mutual did not have knowledge of a Wrongful Act prior to the policy's August 31 Inception Date.  The court does not agree.

As noted above, the policy defines "Wrongful Act" to "mean any actual or alleged negligent act, error or omission or breach of duty committed or alleged to have been committed."  (Emphasis added.)  Mutual contends that the foregoing language is ambiguous because the policy contains "no further definition to help understand or to appreciate what is meant by a 'negligent act, error or omission or breach of duty, or for failure to render such professional services as are customarily rendered.'" Pet'r's Mem. of Law, at 10.

Mutual is correct in observing that the policy does not formally define the term "negligent act."  But, it is flatly

18

incorrect to argue that the term "Wrongful Act" may reasonably be construed: (1) to include only acts that would support successful claims against the insured; or (2) to exclude acts that, in the view of the insured, appear not to be actionable. Mutual's argument is refuted by the policy itself, which defines "Wrongful Act" to include both actual negligent acts and alleged negligent acts, and to include errors, omissions, and breaches that have been committed as well as errors, omissions, and breaches that have been alleged to have been committed.  Given the policy's unambiguous definition of "Wrongful Act" to include both actual and alleged negligence, the various definitions of negligence on which Mutual relies are irrelevant, as is Attorney St. George's assessment of the strength of the Desrosiers' claims.  Based on the undisputed factual record and Mutual's policy, as properly construed, the court concludes that well before the Inception Date of the policy, Mutual had knowledge of the "alleged negligent act, error or omission or breach of duty" described by the Desrosiers in their July 8 letter.  Thus, upon receipt of that letter, Mutual had knowledge of a Wrongful Act. Accordingly, under clause two of the Insuring Agreement, Mutual is not entitled to coverage due to its knowledge of Norton's Wrongful Act(s) prior to the Inception Date of the policy.

Mutual's argument that the term "Wrongful Act" is ambiguous
suffers from an infirmity similar to that suffered by its
argument about the purported ambiguity of the term "Claim."  If
the conduct described in the July letter did not constitute a
Wrongful Act, then the identical conduct, as described in the
November lawsuit, could not have amounted to a Wrongful Act.
Norton did whatever she did in 2008.  The Desrosiers' July
letter and its November lawsuit were based on the very same
conduct.  Between July and November of 2009, nothing about
Norton's conduct in 2008 changed; all that changed was the
vehicle through which the Desrosiers sought redress from Mutual.
Claims that, according to Mutual, were baseless when stated in
the July 8 letter, became no less baseless when presented in the
form of a Writ of Summons.  Under Mutual's theory of
construction, the only way it can have a valid claim for
coverage is for it to concede the merits of the Desrosiers'
claims, thus bringing Norton's conduct within its definition of
a "Wrongful Act."  Such an interpretation is not reasonable.

Based on the foregoing construction of the relevant policy
language, as applied to the undisputed facts of this case, the
court concludes that Mutual had knowledge of the Wrongful Act
underlying the Desrosiers' claim it prior to the Inception Date
of the policy issued by Houston.  Because clause two of the

Insuring Agreement requires the insured to have no knowledge of its Wrongful Act prior to the Inception Date in order for coverage to be triggered, Houston is entitled to judgment as a matter of law on Mutual's claim that it is entitled to coverage from Houston.

### Conclusion

For the reasons given above, Houston's motion for summary judgment, document no. 33, is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.  In the absence of any pending matter in this case, the hearing scheduled for September 12, 2011, is cancelled.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

Dated:  September 6, 2011

cc:  Christopher H.M. Carter, Esq.
     Sarah A. Kutner, Esq.
     Aidan M.  McCormack, Esq.
     Mark D. Morrissette, Esq.
     Danielle L. Pacik, Esq.
     Ralph Suozzo, Esq.